**Bradley J. ODENTHAL, Respondent,**

v.

**NORDEAST CARPET SERVICE, INC., and Iowa Kemper Insurance Company, Relators.**

**No. C1-84-758.**

Supreme Court of Minnesota.

April 5, 1985.

John Tambornino, Minneapolis, for appellant.

Harry Christian, LeCenter, for respondent.

Considered and decided by the court en banc without oral argument.

SCOTT, Justice.

The relators petitioned this court for a writ of certiorari to review the decision of the Workers' Compensation Court of Appeals (WCCA) on the grounds that the decision was not in conformity with the Workers' Compensation Act and was "unwarranted by the evidence."[1]

The respondent was injured in a work-related accident while laying carpet on January 23, 1981. The insurer voluntarily, but intermittently, paid weekly workers' compensation benefits through May 9, 1982. The insurer filed a notice of discontinuance May 21, 1982, citing the employee's lack of disablement as its reason for terminating coverage. The respondent then filed a claim petition, alleging the right to continuing temporary partial benefits from May

---

1. *See Hengemuhle v. Long Prairie Jaycees,* 358 N.W.2d 54 (1984). The relators, in their petition to this court, stated that the WCCA decision was "unwarranted by the evidence." Nevertheless, the standard of review as set out in *Hengemuhle* for cases pending before the WCCA on and after July 1, 1983 (notice of appeal in this case was filed October 26, 1983), is whether the findings and order of the compensation judge are "unsupported by substantial evidence in view of the entire record as submitted." *Hengemuhle* at 59 (*citing* Minn.Stat. § 176.421, subd. 1(3) (Supp.1983)). The WCCA retains the power to substitute its own findings. Section 176.421, subd. 6.

10, 1982, and continuing thereafter and an unrated permanent partial disability of the back.

The compensation judge found that the employee sustained temporary partial disability and a reduction in earning power. He also found a 20% permanent partial disability of the employee's back. Nevertheless, the judge, on a strict interpretation of Minn.Stat. § 176.012(1984), found that no election of coverage in writing was filed with the insurer. He therefore denied the compensation claims, finding that the personal injury of the employee, who was also an officer of the insured company, was not covered under the workers' compensation law. The respondent appealed to the WCCA. The WCCA vacated certain findings and substituted its own findings. Basically, the new findings determined that the insurer had sufficient notice of the election of coverage and that the insurer was estopped from asserting a defense of no written election due to the payment of additional claims. Therefore, the WCCA reversed the compensation judge on this issue. The case was then remanded to the compensation judge to amend his findings and to calculate the temporary partial disability claim of the employee. The relators seek review of the WCCA decision.

Lavonne Odenthal and her husband purchased Nordeast Carpet Service, Inc. (Nordeast), a corporation engaged in selling and installing carpeting, in 1974. Lavonne is the president and 100% shareholder of Nordeast. After her husband died in 1975, Lavonne designated her son Bradley as vice president and her son Rodney as secretary-treasurer of the corporation. The sons performed no executive duties and received no compensation as officers. The sons were both employed as carpet installers and received compensation commensurate with other carpet installers.

Mrs. Odenthal purchased workers' compensation insurance from Iowa Kemper Insurance Company through the Glenn Flicek Insurance Agency of Montgomery, Minnesota. She had known Flicek for 40 years, since her father had also used Flicek's services. Mrs. Odenthal indicated to Flicek that she wanted workers' compensation insurance to cover her sons as employees. The original application completed by Flicek indicated that Bradley and Rodney were employees as well as officers of the corporation.

Mrs. Odenthal understood her sons to be covered and that the policies were to be automatically renewed. She testified that neither her agent nor the insurance company ever advised her of any change in the law requiring her to make an affirmative election of coverage. The premium charged to Nordeast was based on its payroll. Pertinent to this case, Iowa Kemper retained Senn-Johnson, Inc., an independent audit firm, to audit Nordeast's books in January 1981.

An endorsement to the policy dated January 1, 1981, indicated an estimated premium of $65,500, correlating with the figure shown in the 1981 four-page audit by Senn-Johnson, Inc., including coverage for Bradley and Rodney. A policy declaration sheet including the compensation of the sons in the estimated payroll and the endorsement are both signed by Flicek as an authorized agent of the insurance company. Flicek also wrote several memoranda, dated February 16, 1981, February 20, 1981, and October 7, 1981, indicating his belief that the sons were covered as employees.

The insurance company paid several claims of Bradley and Rodney both before and after the date of the accident. Its records verify claims by Rodney for injury dates of February 17, 1978, and August 7, 1981, and claims for Bradley on December 11, 1978, January 23, 1980, and May 15, 1980. The company also paid on the claim in question until May 9, 1982, when a notice of discontinuance was filed, giving rise to this action.

We are asked to decide whether the Workers' Compensation Court of Appeals was correct in deciding that the insurer was responsible for payment of workers' compensation benefits.

When coverage was first acquired in 1975, Minn.Stat. § 176.012 read:

OWNERS MAY BE COVERED. For the purposes of chapter 176, an owner or owners of a business, including partners of a partnership owning a business, whether or not employing any other person to perform a service for hire, shall be included within the meaning of the term employee if such owner, owners, or partners elect to come under the provisions of chapter 176, and provide the insurance required thereunder. Nothing in this section shall be construed to limit the responsibilities of such owners or partners to provide coverage for their employees, if any, required under chapter 176.

The statute underwent several changes over the years and, in 1980, the following pertinent provision was added.

Notice of election of coverage or of termination of election under this section shall be provided *in writing* to the insurer. Coverage or termination of coverage is effective the day following receipt of notice by the insurer or at a subsequent date if so indicated in the notice. The insurance policy shall be endorsed to indicate the names of those persons for whom coverage has been elected or terminated under this section. An election of coverage under this section shall continue in effect as long as a policy or renewal policy of the same insurer is in effect.

Act of March 28, 1980, ch. 392, § 1, 1980 Minn.Laws 112, 113 (emphasis added). This provision remains at the present time and was in effect at the time of the employee's injury.

The compensation judge interpreted the "in writing" provision strictly and denied compensation, finding that no written election was furnished to the insurer.[2] He further determined that any voluntary payments by Iowa Kemper to the employee were made under a mistake of fact and law. The WCCA found that the insurer had sufficient notice of the election of coverage and that the insurer is estopped from asserting a defense of no written election due to the payment of additional claims.

The WCCA concluded that certain documentation existed, sufficient to satisfy Minn.Stat. § 176.012 (1980) requirements. The WCCA reviewed the four-page 1981 audit statement from the accounting firm hired by the insurance company to audit the books for the purposes of determining premiums, and found that the statement "could reasonably lead to the inference that a written election had been made by the employer to cover her sons, and that the election requirements of Minn.Stat. § 176.012 have been sufficiently satisfied."

The pertinent audit was signed by Lavonne Odenthal. The premium charged included the two sons. The records throughout clearly and unequivocally indicate that the two employee-sons were intended to be covered, by both parties, and were covered. The relators' contention that some other type of formal document be required to provide coverage, to meet the statutory phrase "in writing," is absurd. In fact, according to the statute itself, no such writing is needed under these circumstances. The above statute, in effect at the time of this injury, providing that "[n]otice of election of coverage *or of termination of election* under this section shall be provided in writing to the insurer," and that "[a]n election of coverage under this section shall continue in effect as long as a policy or *renewal policy of the same insurer* is in effect" (*see id.* § 176.012 (1984) (emphasis added)), indicates that the original election in 1975 continues until it is terminated in writing, and we so hold. In this continuing situation, representing the usual relationship, it is the responsibility of the insurance company to provide proof of written termination, or coverage continues. A legal election was made in 1975, and the record indicates that this has never been terminated.

Affirmed.

---

2. We recognize that the compensation judge's interpretation may have resulted from his reading of the most recent amendments to Minn. Stat. § 176.001 (1984), mandating that the workers' compensation statutes are not to be afforded a "broad liberal construction." However, even an ultra-strict interpretation of this amendment would not support such a finding.